## BURNS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 16, 1908.)

### No. 135.

1. EVIDENCE—DOCUMENTARY EVIDENCE—ANCIENT MAPS OF SURVEY.

Maps found in volumes in the possession of a historical society, purporting to be maps of a survey made more than 100 years before, both survey and maps being referred to in old deeds, are admissible in evidence as ancient documents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1625½.]

2. SAME—PROOF OF TITLE.

Proof that there is no conveyance of record from a grantor between the time of his acquiring the title to land and the conveyance through which a party claims, which was executed prior to 1840, is sufficient, prima facie, to show title through such conveyance.

3. UNITED STATES—STATUTORY RESTRICTION ON PURCHASE OF LAND—CONSTRUCTION OF STATUTE.

Rev. St. § 3736 (U. S. Comp. St. 1901, p. 2507), providing that no land shall be purchased on account of the United States except under a law authorizing such purchase, should not be construed to apply to executed contracts so as to defeat the title of the United States to land it has paid for, and an act authorizing a public improvement and appropriating money therefor is sufficient authority for the purchase of land necessary or proper to such improvement.

In Error to the District Court of the United States for the Western District of New York.

Hamilton Ward, for plaintiff in error.

Lyman Bass, U. S. Atty., for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an action in ejectment brought by the United States to recover possession of premises occupied by the defendant, being part of a strip of land some 1,600 feet long lying on the eastern shore of Lake Erie and constituting the western edge of the peninsula between Buffalo creek and the lake. The defendant has occupied the premises for 15 years continuously and, without making any claim of title, defends by denying the title of the United States. His possession is as good as the fee until the United States has established its title. After the Revolution a dispute arose between the states of Massachusetts and New York as to the ownership of a large territory now in the state of New York. It was settled by an agreement made at Hartford, December 16, 1786, between commissioners of the respective states, whereby New York admitted title to be in Massachusetts and Massachusetts admitted sovereignty to be in New York. The United States claims to derive title to the premises in question by a chain of conveyances going back to the sovereign, the state of New York, which conveyed to the state of Massachusetts, which conveyed to Robert Morris and by various mesne conveyances to Wilhelm Willinck and others, called the Holland Land Company.

At the trial there was offered in evidence a deed of Egbert Jean Koch to Wilhelm Willinck and others, dated February 10, 1829, conveying a large tract of land, including township No. 11, range 8, excepting "so much and such part of a certain tract of land commonly called the Buffalo Creek Reservation, and designated by that name on said map as shall fall within the lines, limits, and bounds next hereinbefore defined and mentioned." The map referred to was a map of lands purchased by Robert Morris, of the commonwealth of Massachusetts, made in the year 1800 by Joseph and B. Ellicott. There was also offered in evidence deed of Wilhelm Willinck and others to the Farmers' Loan & Trust Company, date not stated in the record, recorded June 29, 1839, conveying certain lands in township No. 11, not including lots 36, 37, 38, and 39, opposite which the strip in question lies, and also "all such other lots, pieces, or parcels of land situate within the bounds of the said tracts called the 983,000 acre tract and known by the letter 'H,' and within the county of Erie and of which said parties of the first part were seised on the thirty-first day of December one thousand eight hundred and thirty-five, if any there shall be."

There was also offered in evidence quitclaim deed of the Farmers' Loan & Trust Company and others, consideration $10, dated September 25, 1847, conveying the premises in question to the United States described as "all that certain sand strip of land formerly recorded and called Lake street in the city of Buffalo on the bank of Lake Erie bounded northeasterly by the southwesterly bounds of outer lots 36, 37, 38, and 39; southeasterly by the continuation of the division line between lots 39 and 40 extended to the waters of Lake Erie; southwesterly by the waters of Lake Erie; and northwesterly by land heretofore quitclaimed by Letitia Evans, containing more or less." The premises were entirely sand, incapable of cultivation, and had never been fenced in or occupied. It is claimed that they were covered by

the catch-all clause mentioned in the deed from Willinck and others to the trust company and others.

The defendant objected to the admission of the deeds from Koch to Willinck and others, from Willinck and others to the trust company and others, and from the trust company and others to the United States on the grounds that there was nothing to show that the premises' in question were not within the Buffalo Creek Reservation or that the grantors to the trust company and others were seised of them December 31, 1835. The trial judge overruled the objection. As the United States must prevail on the strength of its own title, if at all, the burden lay upon it to show that the premises were not within the Buffalo Creek Reservation and that Willinck and others, grantors to the trust company and others, remained seised of them until December 31, 1835, which we suppose was the date of the deed to the trust company and others, though this does not appear in the record.

At the trial a volume was produced, entitled "Title Papers of Holland Land Company," which contained copies of various conveyances to and from the proprietors of the Holland Land Company covering an immense territory, some of which were certified to by the Secretary of State and so admissible in evidence. Section 246, Real Property Law (Laws 1896, p. 608, c. 547); sections 933 and 935 of the Code of Civil Procedure of New York. Reference was occasionally made in these deeds to surveys made by Joseph and B. Ellicott and also to a map made by Joseph and B. Ellicott in the year 1800. At the end of the volume there is a map which on its face professes to have been drawn from a survey by Joseph and B. Ellicott in the year 1800, of Morris's purchase, exhibiting the boundary lines of the several tracts of land purchased by the Holland Land Company, Wilhelm and John Willinck and others, proprietors. This volume came from the possession of the Buffalo Historical Society. Another map from the same source called the "Glowackie map," being the same as the former, but revised in 1829, was offered in evidence. Both were rightly admitted as ancient documents. Such maps were elaborately considered by the court for the purpose of locating premises in the case of Bogardus v. Trinity Church, 4 Sandf. Ch. (N. Y.) 633, 745. The first map has on it a tract of land bordering Niagara river and the eastern shore of Lake Erie marked with the letter "H" in ink and within it a tract marked "Buffalo Creek Reservation" in ink. On the Glowackie map the letter "H" and the reservation appear as part of the engraving. The reservation indicated in the tract marked "H" was made in the following words, under a treaty with the Seneca Indians, dated September 15, 1797:

"Also two hundred square miles to be laid off partly at the Buffalo and partly at the Tonnowanta creeks."

These two maps, as well as the map offered in evidence at the trial compiled by the witness Jones from Township Land and State Reservation Field Notes, on file in the Erie county clerk's office, and the plot showing the western boundary of the Buffalo Creek Reservation made by him from index to Holland Land Company's notes, on

file in the same office, show that the premises in question lay in township 11, range 8, and not in the Buffalo Creek Reservation.

The next objection to the admission of the deeds is absence of proof that the grantors to the trust company remained seised of the premises until December 31, 1835. The government proved by a title searcher that there were no conveyances thereof by them between February 10, 1829, the date they acquired title, and December 31, 1835. The usual method of parting with title to land being by conveyance, we think this proof was sufficient without further proving, as the defendant claims should have been done, that there were no conveyances by sheriffs or referees or adverse holders. The objection depends on the assumption that the grantors might have made mortgages or been subject to judgments or to adverse holdings under which their title might have been divested. The exception was properly overruled.

The deed to Koch seems to have included another exception, viz., of lands previously conveyed by prior owners. But this objection was not presented to the court below nor argued in this court, so we do not consider it.

The defendant took many other exceptions, some of which he declined to argue. Others were disposed of by the finding of the jury that there never had been any adverse possession of the premises; and all his exceptions to the refusal of the court to dismiss the complaint were waived by his going into his defense.

Some further exceptions we will now consider. The defendant excepted to the refusal of the trial court to admit testimony of declarations tending to show adverse possession, but being made by persons never in possession, the testimony was properly excluded.

There was an exception to the admission of the deed to the United States on the ground that it was void under section 3736 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 2507):

"No land shall be purchased on account of the United States except under a law authorizing such purchase."

The Act of July 7, 1838, c. 171, 5 Stat. 270, appropriated:

"For continuing the works at Buffalo Harbor twenty thousand five hundred dollars; and for erecting a mound or sea wall along the peninsula which separates Lake Erie from Buffalo creek to prevent the influx of the lake over said peninsula forty-eight thousand dollars."

If this strip was necessary to or proper for the protection of the sea wall we think that the act impliedly authorized the purchase. The power to build a sea wall implies the power to do whatever is necessary to that end. At all events section 3736 should not be construed to apply to executed contracts, and so the United States be prevented from claiming that for which it has paid.

We find no reversible error in the record as it is before us, and the judgment is therefore affirmed.