## OREGON v. HITCHCOCK.

### IN EQUITY.

No. 16, Original.	Argued April 5, 6, 1906.—Decided April 23, 1906.

In the absence of any act of Congress waiving immunity of the United States or consenting that it be sued in respect to swamp lands, either within or without an Indian reservation, or of any act of Congress assuming full responsibility in behalf of its wards, the Indians, affecting their rights to such lands, this court has no jurisdiction of an action brought by a State against the Secretary of the Interior and Commissioner of the General Land Office to enjoin them from patenting to Indians lands within that State, claimed by the State under the swamp land acts.

The fact that the action is brought by a State against the Secretary of the Interior, who is a citizen of a different State, does not give this Court jurisdiction as the real party in interest is the United States.

It is not the province of the courts to interfere with the administration of the Land Department, and until the land is patented inquiry as to equitable rights comes within the cognizance of the Department and the courts will not anticipate its action. .

By leave of court the State of Oregon filed an original bill against Ethan A. Hitchcock, Secretary of the Interior, and William A. Richards, Commissioner of the General Land Office, to restrain. the defendants from allotting or patenting to any Indians or other persons certain lands within the limits of the Klamath Reservation, which it is alleged were on March 12, 1860, swamp and overflowed lands, and praying a decree establishing the title of the State of Oregon to such lands and declaring that the title is subject only to such right of temporary and terminable occupation as may exist in the Indians at present occupying the said reservation, and is not to be defeated by any allotment, patent, agreement or other arrangement. To this bill the defendants filed a demurrer, partly on jurisdictional grounds and partly on the merits.

For a clear understanding of the questions presented the allegations in the bill must be stated. It is alleged that the defendant Hitchcock is a citizen of the State of Missouri, the defendant Richards of the State of Wyoming; that by an act of Congress, approved February 14, 1859, 11 Stat. 383, Oregon was admitted into the Union; that by an act approved September 28, 1850, 9 Stat. 519, Congress granted to the State of Arkansas and other States all lands, within their respective limits, which at the date of the act were "swamp and overflowed lands," and by reason thereof unfit for cultivation; that by an act of March 12, 1860, 12 Stat. 3, the provisions of the last-named act were extended to the State of Oregon; that on February 14, 1859, as well as on March 12, 1860, the United States owned in fee simple a large region and body of land lying within the boundaries of the State of Oregon, which said body of land was neither reserved nor dedicated to any public

use and was free from any claim of title or possession, saving and excepting a right to temporary use and occupation belonging to certain Indian tribes; that within this large body of lands were three tribes or bands of Indians—the Klamaths, the Modocs and the Yahooskins—few in number, that number being estimated by the officials of the United States in charge at from 1,200 to 1,500; that they were all in a savage state, uncivilized, without a fixed place of abode and roaming from place to place within the region; that they had no other kind of tenure or title than that which they and their ancestors held from time immemorial and before the settlement of white men in the territory; that on October 14, 1864, 16 Stat. 707, a treaty was negotiated between the United States and these tribes of Indians, by which they ceded to the United States their right, title and claim to all these lands, except a certain specified and smaller tract within the original out-boundaries, which was created a reservation for their use; that said reservation was continued in the occupation of the Indians according to the aboriginal usages and customs of said Indians and of Indians generally, without any claim or pretense of permanent title or individual right to the lands, or any of them, and without any steps taken towards conferring the ultimate title upon them until after the year 1899, when the defendant Hitchcock, Secretary of the Interior, directed and caused a large portion of the lands to be surveyed and divided into numerous definite lots or tracts, for the purpose and with the intention of allotting such tracts to the individual members of the tribes, to be by them held in severalty, and the further purpose of issuing and delivering to each of them a patent declaring that the United States holds the tract allotted in trust for the Indian and his heirs for a period of twenty-five years, and that at the expiration of such period it will convey the tract to him or his heirs discharged of the trust and free from all incumbrances; that in this the defendant Hitchcock was assuming and professing to act under the authority of the act of Congress of February 8, 1887, 24 Stat. 388; that within the reservation made by the

treaty of 1864 were large tracts, which had been and were on March 12, 1860, swamp and overflowed lands and unfit for cultivation, and hence under the act of March 12, 1860, had become the property of the State, subject only to the right of occupancy on the part of the Indians; that in the year 1902, before any patents were issued and while the surveying and allotting were in progress, the State caused an examination to be made for the purpose of ascertaining the tracts which on March 12, 1860, were swamp and overflowed lands, and a list prepared of them, which list is attached to the bill as an exhibit; that it presented and filed that list with the surveyor general of the United States for the State of Oregon, together with evidence tending to prove that all of the tracts within the list had been and were on March 12, 1860, swamp and overflowed lands and rendered thereby unfit for cultivation, which evidence was found and certified by the surveyor general to be sufficient. That thereupon the State selected and claimed said tracts as granted to it by the act of Congress of March 12, 1860, and applied to the proper officers of the United States to inquire into and consider the claims of the State; that this application and the evidence was submitted to the defendant Richards, as Commissioner of the General Land Office, and on November 18, 1903, the Acting Commissioner denied and rejected the claim upon the sole ground that the lands, whether swamp and overflowed or not, were not granted to the State of Oregon by the act of Congress. From this decision an appeal was taken to the Secretary of the Interior, and the decision of the Land Office affirmed.

*Mr. Charles A. Keigwin,* with whom *Mr. Andrew M. Crawford* and *Mr. William B. Matthews* were on the brief, for complainant:

The objection taken by the demurrer to the jurisdiction of the court is met by the decision in the recent case of *Minnesota v. Hitchcock,* 185 U. S. 373. The statute of 1901 was necessary only because of the difficulty of making the Indians parties,

which would have defeated the original jurisdiction of this court. The statute was passed to énable the United States to be the defendant on account of its absence of interest in the suit and not on account of the immunity of the Government from suit.

Nor is a statute or other express warrant necessary to enable a suit affecting the interest of the Government to be maintained against its officers. The immunity of the sovereign from suit does not extend to those who act for it; and the concern of the sovereign in the subject matter of a controversy does not preclude the jurisdiction of the courts. While the State may not be directly sued, the acts of those who assume to act for the State may be examined, and such acts may be enjoined even when taken or proposed to be taken by direct authorization of the sovereign. Even the fact that the State has the entire ultimate interest in the controversy, and is solely to be affected by the judgment, does not prevent the maintenance of the action against the proper officers of the State. *Osborn* v. *United States Bank,* 9 Wheat. 738; *United States* v. *Peters,* 5 Cranch, 115; *Davis* v. *Gray,* 16 Wall. 203; *Allen* v. *R. R. Co.,* 114 U. S. 311; *Board of Liquidation* v. *McComb,* 92 U. S. 531; *Hagood* v. *Southern,* 117 U. S. 52; *In re Ayres,* 123 U. S. 443; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Rolston* v. *Crittenden,* 120 U. S. 390; *Reagan* v. *Loan and Trust Co.,* 154 U. S. 362; *Ex parte Tyler,* 149 U. S. 164.

Where a Federal officer is made defendant, it is no objection to the jurisdiction that the controversy involves the property or otherwise concerns the interest of the United States; nor is it necessary, the case being of the character in which a state officer might be sued, that the Government should consent to the suit being brought. *United States* v. *Lee,* 106 U. S. 196; *Meigs* v. *McClung,* 9 Cranch, 11; *Grisar* v. *McDowell,* 6 Wall. 363; *Brown* v. *Huger,* 21 How. 305; *United States* v. *Schurz,* 102 U. S. 378; *Noble* v. *Logging Co.,* 147 U. S. 165.

In cases where jurisdiction is asserted on the ground of diverse citizenship, the Federal courts look only to the citizen-

ship of the parties named on the record, without regard to their relationship to the cause or to the citizenship of those who, though not parties, are the real parties in interest. *Childress* v. *Emory,* 8 Wheat. 642; *Rice* v. *Houston,* 13 Wall. 66; *Bonnafee* v. *Williams,* 3 How. 574; *Dodge* v. *Tulleys,* 144 U. S. 451; 1 Foster's Federal Practice, 3d ed. § 19. The same rule applies where the defendant is sued in a purely official capacity and the real interest is in the State of which he is an officer. *Davis* v. *Gray,* 16 Wall. 203.

With respect to the suggestion that the jurisdiction might be ousted if one of the defendants should, in the progress of the suit, be succeeded by a citizen of the complainant State, the rule seems to be settled, that, if the jurisdiction is properly acquired by reason of the diverse citizenship of the original parties, it is not defeated by such a change of parties as brings citizens of the same State upon opposite sides of the record. 1 Foster's Federal Practice, § 19; *Stewart* v. *Dunham,* 115 U. S. 61; *Phelps* v. *Oakes,* 117 U. S. 236; *Anderson* v. *Watt,* 138 U. S. 707; *Tug River Co.* v. *Brigel,* 86 Fed. Rep. 818.

As a second additional ground of jurisdiction the present cause is within that clause of the Constitution which extends the judicial power of the Federal courts "to all cases in law and equity arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority." In this case, the State claims the land under one of the laws of the United States, the swamp land grant of Congress, and the defendants assert their right to control and dispose of the lands as the property of the United States in virtue of an act of Congress passed in 1848, of a treaty made with the Indians in 1864, and of a statute enacted in 1887. There can be no question of the fact that the case is within the class defined in the last quoted clause of the Constitution.

The general rule that until patent is issued the courts will not interfere with the Land Department does not apply to a case like this. Upon the averments of the bill, and upon the law applicable to the facts stated, the State of Oregon has in the

lands a vested title such as is recognized and protected by the courts. Though the legal title remains in the United States, it so remains only for the purpose of being transferred to the State; and though the legal title is under the control of the Secretary of the Interior, the equitable title in the State is one which that officer is bound to respect, and which he cannot arbitrarily destroy or impair. *Cornelius* v. *Kessel,* 128 U. S. 456, 461; *Brown* v. *Hitchcock,* 173 U. S. 473, 478.

The duty of the courts in a proper case, to respect an equitable title is equally clear. The State being entitled to have the lands patented, she is, so far as her right to be protected is concerned, in as favorable a situation as if patents had been, as they should be, issued. *Simmons* v. *Wagner,* 101 U. S. 260; *Stark* v. *Starr,* 6 Wall. 402.

So, universally, the right conferred by a complete entry, wanting only patent to consummate legal title, is property; the land is not subject to other entry, and it is taxable as private property. *Carroll* v. *Safford,* 3 How. 441; *Witherspoon* v. *Duncan,* 4 Wall. 210; *Railway Co.* v. *Prescott,* 6 Wall. 603; *Railroad Co.* v. *Price Co.,* 133 U. S. 496; *Cornelius* v. *Kessel,* 128 U. S. 456. See also *French* v. *Fyan,* 93 U. S. 169; *Barney* v. *Dolph,* 97 U. S. 652.

*Mr. F. W. Clements,* Assistant Attorney, and *Mr. A. C. Campbell,* Special Assistant to the Attorney General, with whom *Mr. F. L. Campbell,* Assistant Attorney General, was on the brief, for defendants:

The case does not belong to that class wherein this court has original jurisdiction. The judicial power belonging to the United States is conferred by Article III of the Constitution, and its limits are defined by the second section.

The mere fact that the State is the complainant is not conclusive. Taylor's Jurisdiction Supreme Court, § 30; *Minnesota* v. *Hitchcock,* 185 U. S. 373, where jurisdiction was conferred by special act of Congress. See also *California* v. *Southern Pacific Co.,* 157 U. S. 229.

But if it were conceded that the United States is the real party in interest and would be directly affected by the decree, the court is without jurisdiction because the Government cannot be made a party defendant in any court without its consent, and consent has not been given in an action such as is here under consideration. *United States* v. *Lee,* 106 U. S. 196.

. If it be conceded that the doctrine is limited, or that it has no application to a case like the one at bar, or that the defendants as officers of the Government are the proper parties to the action, this court, although it might have appellate, would not have original, jurisdiction. In such case the proper forum for the institution of the suit would be the Supreme Court of the District of Columbia. *United States* v. *Schurz,* 102 U. S. 378; *Union River Logging Company,* 147 U. S. 165; *Brown* v. *Hitchcock,* 173 U. S. 473. An injunction against individuals as officers of the Government is limited to a suit such as is authorized by law and where the act enjoined is purely ministerial in character. Taylor's Jurisdiction of Supreme Court, § 48; *In re Ayers,* 123 U. S. 443. . The acts here sought to be restrained are not ministerial in character. *Mississippi* v. *Johnson,* 4 Wall. 475; *United States* v. *Schurz,* 102 U. S. 378.

. The complainant has no interest in the subject matter of the action. The lands are subject to allotment among the Indians. Neither have the defendants any interest in the subject matter of the action as individuals. *Minnesota* v. *Hitchcock, supra.*

Persons whose interests would be affected by a decree are not made parties. If made parties the jurisdiction of the court would be defeated, if otherwise it had jurisdiction.

The allottee Indians are interested parties and will be materially affected by a decree in favor of the State; therefore they should be made parties. *Shields* v. *Barrow,* 17 How. 130; *Chadbourne's Executors* v. *Coe,* 10 U. S. App. 78. As the allottees are residents of Oregon and citizens thereof, *Matter of Heff,* 197 U. S. 488, if they are made parties the jurisdiction of the

court would for that reason, be ousted. *California* v. *Southern Pacific Company*, 157 U. S. 229; *Minnesota* v. *Northern Securities Company*, 184 U. S. 199, 245.

The legal title to the lands involved is in the United States. The State admits they are burdened with the Indian right of occupancy. It is settled law that until the Indian right of occupancy to lands has been extinguished the Indian Bureau, of which the Secretary of the Interior is the head, has jurisdiction and control over the lands so occupied. *United States* v. *Thomas*, 151 U. S. 577. Until the legal title to the land passes from the Government inquiry as to all equitable rights comes within the cognizance of the Land Department. *Brown* v. *Hitchcock*, 173 U. S. 473; *Humbird* v. *Avery*, 195 U. S. 480, 502.

The State admits in the bill of complaint that there has been no finding by the Land Department, of which the Secretary of the Interior is the head, that the lands were swamp or overflowed in character on March 12, 1860. Until such finding is made and patent issued the grant is in process of administration. *Michigan Land & Lumber Company* v. *Rust*, 168 U. S. 589, 591; *New Orleans* v. *Paine*, 147 U. S. 261, 266.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The question of jurisdiction of course precedes any inquiry into the merits. By sec. 2 of art. III of the Constitution and sec. 687, Rev. Stat., this court has original jurisdiction of a suit brought by a State against citizens of other States. *Pennsylvania* v. *Quicksilver Company*, 10 Wall. 553; *Wisconsin* v. *Pelican Insurance Company*, 127 U. S. 265, 287, and cases cited in the opinion; *California* v. *Southern Pacific Company*, 157 U. S. 229, 258; *Minnesota* v. *Hitchcock*, 185 U. S. 373. But the contention is that the United States is the real party in interest as defendant, that it cannot be sued without its consent, and that it has given no consent. While the nominal defendants are

citizens of a State other than Oregon, yet they have no interest whatever in the controversy, and if a decree be rendered against them in favor of the State it will not affect their interests but bind and determine the rights of the United States, the real, substantial defendant. It is further said that if there is any other interest adverse to the plaintiff it belongs to the Klamath Indians, who are not made parties, and that the rule in equity is not to determine a suit without the presence of the parties really to be affected by the decree. *California v. Southern Pacific Company, supra.*

The question of jurisdiction in a case very similar to this was fully considered in *Minnesota v. Hitchcock, supra.* There, as here, a State was plaintiff, and the suit was brought against the Secretary of the Interior and the Commissioner of the General Land Office to restrain them from selling school sections 16 and 36 in what was known as the "Red Lake Indian Reservation." This suit is brought by a State against the same officers, to restrain them from allotting and patenting in severalty swamp lands within the Klamath Indian Reservation. In that case we said (p. 387):

"Now, the legal title to these lands is in the United States. The officers named as defendants have no interest in the lands or the proceeds thereof. The United States is proposing to sell them. This suit seeks to restrain the United States from such sale, to divest the Government of its title and vest it in the State. The United States is, therefore, the real party affected by the judgment and against which in fact it will operate, and the officers have no pecuniary interest in the matter. If whether a suit is one against a State is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered, the same rule must apply to the United States. The question whether the United States is a party to a controversy is not determined by the merely nominal party on the record but by the question of the effect of the judgment or decree which can be entered."

It is true in that case we sustained the jurisdiction of this court, but we did so by virtue of the act of March 2, 1901, 31 Stat. 950, which was held to be a consent on the part of the United States to be sued in respect to school lands within an Indian reservation and an acceptance by the Government of full responsibility for the result of the decision, so far as the Indians, its wards, were concerned. But neither of the two facts deemed essential to the maintenance of that suit appear in this. There is no act of Congress waiving immunity of the United States or consenting that it be sued in respect to swamp lands, either within or without an Indian reservation, and there is no act of Congress assuming full responsibility in behalf of its wards, the Indians, for the result of any suit affecting their rights in these lands. It is unnecessary to repeat all that was said in that opinion in reference to these matters. It is sufficient to refer to it for a full discussion of the question.

Again; it must be noticed that the legal title to all these tracts of land is still in the Government. No patents or conveyances of any kind have been executed. There has been no finding or adjudication by the Land Department that the lands referred to were swamp or overflowed on March 12, 1860. Under those circumstances it is not a province of the courts to interfere with the Land Department in its administration. So far as a grant of swamp lands is claimed, it must be held that the grant is in process of administration, and, until the legal title passes from the Government, inquiry as to equitable rights comes within the cognizance of the Land Department. Courts may not anticipate its action or take upon themselves the administration of the land grants of the United States. *New Orleans* v. *Paine,* 147 U. S. 261, 266; *Michigan Land & Lumber Company* v. *Rust,* 168 U. S. 589, 591; *United States* v. *Thomas,* 151 U. S. 577; *Brown* v. *Hitchcock,* 173 U. S. 473; *Humbird* v. *Avery,* 195 U. S. 480, 502, 503.

For these reasons the demurrer is sustained and the bill is

*Dismissed.*