## ARIZONA *v.* CALIFORNIA ET AL.

No. —, original.   Argued April 28, 1936.—Decided May 25, 1936.

Mr. *James R. Moore,* with whom *Mr. John L. Sullivan,* Attorney General of Arizona, and *Mr. Charles L. Strouss* were on the brief, for plaintiff.

Mr. *William W. Ray,* with whom *Mr. Paul P. Prosser,* Attorney General of Colorado, *Mr. Frank H. Patton,* Attorney General of New Mexico, *Mr. Joseph Chez,* Attorney General of Utah, *Mr. Ray E. Lee,* Attorney General of Wyoming, and *Messrs. Charles Roach, Shrader P. Howell, L. Ward Bannister,* and *Grover A. Giles* were on the brief, for the defendant States of Colorado et al.

Mr. *Phil D. Swing,* with whom *Mr. U. S. Webb,* Attorney General of California, and *Mr. Gray Mashburn,* Attorney General of Nevada, were on the brief, for the defendant States of California et al.

Mr. Justice Stone delivered the opinion of the Court.

This case arises upon the petition of the State of Arizona for leave to file in this Court her bill of complaint against the several states named as defendants and upon their returns to the order of this Court, directing them to show cause why the prayer of the petition should not be granted. The returns raise numerous objections to the sufficiency of the proposed bill of complaint, only two of which we find it necessary to consider. One is that the proposed bill fails to present any justiciable case or controversy within the jurisdiction of the Court. The other is that the United States, which is not named as a defendant and has not consented to be sued, is an indispensable party to any decree granting the relief prayed by the bill.

The relief sought is: (1) That the quantum of Arizona's equitable share of the water flowing in the Colo-

rado River, subject to diversion and use, be fixed by this Court, and that the petitioner's title thereto be quieted against adverse claims of the defendant states. (2) That the State of California be barred from having or claiming any right to divert and use more than an equitable share of the water flowing in the river, to be determined by the Court, and not to exceed the limitation imposed upon California's use of such water by the Boulder Canyon Project Act, 45 Stat. 1057, and the Act of the California legislature of March 4, 1929, Ch. 16, Stats. of Calif., 1929, p. 38. (3) That it be decreed that the diversion and use by any of the defendant states of any part of the equitable share of the water decreed to Arizona pending its diversion and use by her shall not constitute a prior appropriation or confer upon the appropriating state any right in the water superior to that of Arizona. (4) That any right of the Republic of Mexico to an equitable share in any increased flow of water in the Colorado River made available by works being constructed by or for California, shall be supplied from California's equitable share of the water, and that neither petitioner nor the defendant states other than California shall be required to contribute to it from their equitable shares as adjudicated by the Court.

The proposed bill thus, in substance, seeks a judicial apportionment among the states in the Colorado River Basin of the unappropriated water of the river, with the limitation that the share of California shall not exceed the amount to which she is limited by the Boulder Canyon Project Act and by her statute, and with the proviso that any increase in the flow of water to which the Republic of Mexico may be entitled shall be supplied from the amount apportioned to California. Our consideration of the case is restricted to an examination of the facts alleged in the proposed bill of complaint and of those of which we may take judicial notice.

The Colorado River, a navigable stream, see *Arizona* v. *California*, 283 U. S. 423, having a total length of 1,293 miles, rises in Colorado and flows through that state 245 miles, then through Utah 285 miles, then through Arizona 292 miles, then on the boundary between Arizona and Nevada 145 miles, then on the boundary between Arizona and California 235 miles, then on the boundary between Arizona and Mexico 16 miles, and then through the Republic of Mexico to the Gulf of California 75 miles. For 688 miles, more than half its length, the river flows in Arizona or upon her boundary.

Two dams have been built across the Colorado River by the Secretary of the Interior, acting under authority of acts of Congress. One, Boulder Dam, 378 miles below the intersection of the river with the boundary between Arizona and Utah, creates Boulder Reservoir, extending along the bed of the river 115 miles above the dam. The other, Laguna Dam, is located 18 miles above the point where the Colorado River becomes the boundary between Arizona and Mexico. Two other dams are projected and in course of construction under contracts entered into by the Secretary of the Interior, pursuant to acts of Congress. Boulder Canyon Project Act, § 1; United States Session Laws, 1935, p. 1039; see *United States* v. *Arizona*, 295 U. S. 174. Both are in that part of the river which flows between Arizona and California. One, Parker Dam, is approximately 150 miles south of Boulder Dam, and the other, Imperial Dam, is 4½ miles above Laguna Dam.

The average annual undepleted flow of the Colorado River in Arizona, at Imperial Dam, is approximately 16,840,000 acre feet.[1] Of the total undepleted flow approxi-

---

[1] At Lees Ferry, twenty-three miles below the point where the river enters Arizona from Utah, the average undepleted annual flow is 16,660,000 acre feet. At Boulder Dam it is 17,720,000 acre feet. At the Imperial Dam it is 16,840,000. Non-diversion river losses

mately 6,100,000 acre feet per annum have been appropriated and put to beneficial use in the United States and the Mexican Republic.[2] After deducting all existing appropriations there remains in the river subject to future appropriation a net average annual flow of at least 9,720,-000 acre feet.[3]

About 2,027,000 acres of land are under irrigation by water diverted from the Colorado River and its tributaries other than the Gila, of which 72,120 acres are in Arizona.[4] There are more than 2,000,000 acres of land in Arizona that are not irrigated, but are susceptible of economic irrigation from the unappropriated water of the Colorado River and its tributaries other than the Gila, and which

---

and evaporation below Lees Ferry aggregate 1,400,000 acre feet annually and are about offset by the river's gains between Lees Ferry and Boulder Dam.

[2] Of this amount approximately 2,500,000 acre feet are diverted annually above Lees Ferry, and are used and consumed in Utah, New Mexico, Colorado and Wyoming, and 3,600,000 acre feet are diverted annually below Lees Ferry from the river and its tributaries other than the Gila. The average annual diversions taking place below the southern boundary of Utah, stated in acre feet are as follows: Arizona, 585,000; California, 2,475,000; Nevada, 40,000; Mexican Republic, 500,000.

[3] At Lees Ferry 10,500,000 acre feet, at Boulder Dam 11,100,000 acre feet, at Imperial Dam 9,720,000 acre feet. Allowing for estimated increase in use of the water now appropriated for irrigation of land above Boulder Dam and for diversions by projects now under construction in Colorado, it is estimated that the flow of the Colorado River into and out of the Boulder Dam will, in 1938, average 15,069,000 acre feet per year.

[4] The acreage under irrigation by water diverted from the Colorado River and its tributaries, other than the Gila, is distributed among the Colorado River basin states as follows: Arizona 72,120; California 464,653; Colorado 856,413; New Mexico 45,937; Nevada 12,308; Utah 347,452; Wyoming 228,699. Approximately 525,000 acres of land in the Gila River basin are irrigated from the waters of that river and its tributaries, of which 520,000 acres are located in Arizona.

cannot be irrigated from any other source. There are 5,000,000 additional acres of land in Arizona "potentially susceptible of economic irrigation" from the waters of the river. There are pending projects to irrigate more than 1,000,000 acres of this unirrigated but irrigable land of which more than 100,000 acres are owned by the State of Arizona. The amount of water required for such irrigation is in excess of 4,000,000 acre feet annually.

By the Colorado River Compact, see *Arizona* v. *California, supra,* entered into by the defendant states and approved by Congress, but to which Arizona is not a party, the undepleted flow of water of the Colorado River is apportioned between the upper basin and the lower basin of the river valley, the point of division being Lees Ferry, 23 miles below the southern boundary of Utah. To each basin there is apportioned 7,500,000 acre feet per annum and the lower basin has the additional right to increase its "beneficial consumptive use" of the water by 1,000,000 feet per annum.

By the Boulder Canyon Project Act, the Secretary of the Interior was authorized, subject to the terms of the Colorado River Compact, to construct, operate and maintain a dam and incidental works at the present site of Boulder Dam, with an appurtenant hydro-electric plant, and to use and dispose of the water stored above the dam for irrigation and for the development of power. The Act also provided that no authority should be exercised under it until six of the states in the Colorado River basin, including California, should ratify the Compact, and unless the State of California, by act of its Legislature, should agree with the United States, for the benefit of all the states in the river basin, that the aggregate annual use of water from the river by the State of California should not exceed 4,400,000 acre feet annually, plus one-half of any excess of surplus waters unapportioned by the Compact. The Compact was duly ratified by the six

defendant states, and the limitation upon the use of the water by California, was duly enacted into law by the California Legislature by Act of March 4, 1929, *supra:* By its provisions the use of the water by California is restricted to 5,485,500 acre feet annually.[5]

The Secretary of the Interior, acting under authority of § 5 of the Boulder Canyon Project Act, has entered into contracts with California corporations for the storage in the Boulder Dam reservoir and the delivery, for use in California,[6] of 5,362,000 acre feet of water annually, for a stipulated compensation. The proposed bill of complaint charges that, notwithstanding the limitation upon the use of the water by California, certain California corporations, with the aid of the United States, propose to divert from the river and use consumptively in California an aggregate amount of 14,330,000 acre feet annually, including that which the Secretary of the Interior has contracted to deliver, or 8,444,500 acre feet in excess of the amount which California is permitted to take by the Boulder Canyon Project Act and her own statute, and sufficient to use all but about 1,000,000 acre feet of the unappropriated annual flow of the river.[7]

---

[5] The surplus water of the river in the lower basin, unapportioned by the Compact, is 2,171,000 acre feet, one-half of which, or 1,085,500 acre feet, California is entitled, under the Boulder Canyon Project Act, and her own statute, to add to the 4,400,000 acre feet which they specifically allot to her, making a total allotment of 5,485,500 acre feet annually.

[6] Metropolitan Water District..... 1,100,000 acre feet
Imperial Valley and others...... 3,850,000 acre feet
City of San Diego............... 112,000 acre feet
Palo Verde...................... 300,000 acre feet

---

Total................... 5,362,000 acre feet

[7] By way of specification of this general statement it is alleged that such corporations have made application to the Division of Water Resources, Department of Public Works of the State of California,

Arizona asserts that she is damaged by the impending appropriations of water by California by reason of the fact that future reclamation of land in Arizona can be accomplished only by large scale projects, contemplating the irrigation of large areas to be operated and administered as a single unit, and, because of the great cost of diversion works and large expenditures required to establish such projects, it will be impossible to finance them "unless water for the irrigation of said land can be appropriated and unclouded, undisputed and incontestable rights to the permanent use thereof acquired at or prior to the time of constructing such works."

It is conceded both by the bill of complaint and the returns that all the states in the Colorado River basin except California, and California so far as material to the present case, apply the doctrine of appropriation to the waters of flowing streams in their respective territories. Under this doctrine, diversion and application of water to

---

for permits to divert and appropriate annually from the river quantities of water aggregating more than 12,670,000 acre feet, and that the State of California will grant the permits so applied for, upon completion by such corporations of the necessary diversion works. In addition, it is alleged that the Secretary of the Interior, pursuant to § 1 of the Boulder Canyon Project Act, has entered into a contract with the Imperial Irrigation District, a California corporation, in connection with the building of the Imperial Dam for the construction of a main canal known as the "All American Canal," to connect the dam with the Imperial and Coachella Valleys, which provides for the delivery to the United States, at the Imperial Dam, of 1,460,000 acre feet per year, to be used for irrigation and power. Approximately 200,000 acre feet of this amount will be used for the irrigation of lands in the United States Yuma Reclamation Project in Arizona. The remainder will be used for irrigation of the Yuma Indian Reservation in California and for power. An additional 400,000 acre feet will be used for desilting the canal. The water to be used for desilting and power will be returned to the river at a point where it cannot be recaptured for further use in the United States.

a beneficial use constitute an appropriation, and entitle the appropriator to a continuing right to use the water, to the extent of the appropriation, but not beyond that reasonably required and actually used. The appropriator first in time is prior in right over others upon the same stream, and the right, when perfected by use, is deemed effective from the time the purpose to make the appropriation is definitely formed and actual work upon the project is begun, or from the time statutory requirements of notice of the proposed appropriation are complied with, provided the work is carried to completion and the water is applied to a beneficial use with reasonable diligence. See *Arizona* v. *California, supra; Kansas* v. *Colorado,* 206 U. S. 46; *Wyoming* v. *Colorado,* 259 U. S. 419.

Arizona, by her proposed bill of complaint, asserts no right arising from her own appropriation of the waters of the Colorado River. No infringement of her rights acquired by appropriation is alleged, and no relief for their protection is prayed. While it is alleged that definite plans have been made for the irrigation of 1,000,000 acres of unirrigated land in Arizona, and a right to share in the water for that purpose is asserted, it does not appear that any initial step toward appropriation of water for such a project has been taken.

The right of the California corporations to withdraw from the river a total of 5,362,000 acre feet annually under the contracts with the Secretary of the Interior, is challenged only insofar as the prayer for relief asks that the unappropriated water of the river be equitably apportioned among Arizona and the defendant states, and that any increased amount to which the Republic of Mexico may be entitled be directed to be supplied from the amount to which California may otherwise be found to be equitably entitled.

Arizona does not assert any right to the benefit of the undertaking of California, in conformity to the Boulder Canyon Project Act, to restrict its own use of the water. The brief for Arizona disclaims the assertion of any rights under "the Boulder Canyon Project Act,. the Colorado River Compact, or the Boulder Project itself."

The allegations and prayer of the bill are of significance only if Arizona, in advance of any act of appropriation, and independently of any rights which she may have acquired under the Boulder Canyon Project Act, may demand a judicial decree exempting the available water of the river, or some of it,. from appropriation by other states until the indefinite time in the future when she or her inhabitants may see fit to appropriate it. A justiciable controversy is presented only if Arizona, as a sovereign state, or her citizens, whom she represents, have present rights in the unappropriated water of the river, or if the privilege to appropriate the water is capable of division and when partitioned may be judicially protected from appropriations by others pending its exercise.

The defendant states deny that there is any such right or privilege upon which this Court can act judicially in advance of appropriation. While California, by statement of her attorney general in brief and argument, disclaims any purpose to take more than the water to which she is restricted by the Boulder Canyon Project Act and by her own statute, she, and the other defendant states, nevertheless maintain that the authority of this Court is limited to the application of the local law of appropriation in adjudicating their rights. They deny that Arizona and her inhabitants have or can assert any right in the water before its appropriation, and challenge the jurisdiction of the Court to make any division of the unexercised privilege among the states entitled to share in the unappropriated water. Pursued to its logical end, their con-

568

tention is that California, save as she may have renounced the privilege, is free, subject to prior appropriations, to appropriate to her own use the entire flow of the water in the river, to the exclusion of any future beneficial enjoyment of it by Arizona.

Arizona insists that this court, in adjudicating the rights of states in the water of interstate streams, has declared that it will not hold itself restricted to rigid application of local rules of law governing private rights; that independently of those rules it may have recourse to applicable principles of international law and equity tending to secure to sovereign states equality of right in such water. *Kansas* v. *Colorado,* 185 U. S. 125, 146; *Missouri* v. *Illinois,* 200 U. S. 496, 520; *Kansas* v. *Colorado,* 206 U. S. 46, 97, *et seq.; Wyoming* v. *Colorado, supra,* 465, 470; *Connecticut* v. *Massachusetts,* 282 U. S. 660, 670; *New Jersey* v. *New York,* 283 U. S. 336, 342, 343. It points out that departure from the local formula may be compelled where the contending states apply, locally, different and irreconcilable doctrines, *Kansas* v. *Colorado, supra,* and that the common law of private riparian rights has been modified, even in suits between states adhering to it, by the application of principles of equitable apportionment. *Missouri* v. *Illinois, supra,* 526; *Connecticut* v. *Massachusetts, supra,* 671; *New Jersey* v. *New York, supra,* 343. But we have no occasion to consider the arguments urged upon us in support of the adoption, in this case, of a different rule from that of appropriation, as applied locally, for we are of the opinion that in the circumstances disclosed by the bill of complaint there can be no adjudication of rights in the unappropriated water of the Colorado River without the presence, as a party, of the United States, which, without its consent is not subject to suit even by a state. *Kansas* v. *United States,* 204 U. S. 331, 343.

The Colorado River is a navigable stream of the United States. The privilege of the states through which it flows and their inhabitants to appropriate and use the water is subject to the paramount power of the United States to control it for the purpose of improving navigation. *Arizona* v. *California, supra.* The Boulder Canyon Project Act, § 1, authorized the Secretary of the Interior to construct, at the expense of the United States, the Boulder Dam, with storage reservoir, and a hydro-electric plant. It provides, §§ 5, 6, for control, management and appropriation of the water by the United States, and declares, §§ 1, 8, (a), that this authority is conferred subject to the terms of the Colorado River Compact "for the purpose of controlling the floods, improving navigation and regulating the flow of the Colorado River, providing for storage and for the delivery of the stored waters thereof for reclamation of public lands and other beneficial uses exclusively within the United States, and for the generating of electrical energy as a means of making the project herein authorized a self-supporting and financially solvent undertaking."

To carry out the purpose of the Act, § 1 directs the creation of a storage reservoir of a capacity of not less than 20,000,000 acre feet. According to the allegations of the proposed bill, the actual capacity of the completed reservoir is 30,500,000 acre feet, which is nearly twice the undepleted annual flow of the river, and four and one-half times the amount of water remaining unappropriated after deducting that which California is to receive under the contracts with the Secretary of the Interior.

By § 6 of the Act the dam and reservoir are directed to be used "first, for river regulation, improvement of navigation, and flood control; second, for irrigation and domestic uses and satisfaction of present perfected rights . . .; and third, for power." Section 5 pro-

vides that "no person shall have or be entitled to have the use for any purpose of the water stored as aforesaid except by contract made as herein stated." Section 5 also provides that the Secretary of the Interior may contract for the storage of water and for delivery thereof upon charges which will provide revenue, and § 5 (c) directs that "Contracts for the use of water . . . shall be made with responsible applicants therefor who will pay the price fixed by the Secretary with a view to meeting the revenue requirements herein provided for." Acting under this authority the Secretary of the Interior has substantially completed the project and has entered into contracts, so the bill of complaint alleges, for the delivery of 5,362,000 acre feet of stored water to California corporations, and for the financing and construction of Parker and Imperial Dams and the All American Canal to facilitate the use of this water in California.

Without more detailed statement of the facts disclosed, it is evident that the United States, by Congressional legislation and by acts of its officers which that legislation authorizes, has undertaken, in the asserted exercise of its authority to control navigation, to impound, and control the disposition of, the surplus water in the river not already appropriated. The defendant states contend, and Arizona does not deny, that the natural dependable flow of the river is already over-appropriated, and it does not appear that without the storage of the impounded water any substantial amount of water would be available for appropriation.

The decree sought has no relation to any present use of the water thus impounded which infringes rights which Arizona may assert subject to superior but unexercised powers of the United States. Cf. *Wisconsin* v. *Illinois*, 278 U. S. 367; see *Arizona* v. *California, supra,* 464; *United States* v. *Arizona, supra,* 183. The prayer is for a decree of equitable division of the privilege of future

appropriation. The relief asked, and that which upon the facts alleged would alone be of benefit to Arizona, is a decree adjudicating to petitioners the "unclouded . . . rights to the permanent use of" the water. Such a decree could not be framed without the adjudication of the superior rights asserted by the United States. The "equitable share" of Arizona in the unappropriated water impounded above Boulder Dam could not be determined without ascertaining the rights of the United States to dispose of that water in aid and support of its project to control navigation, and without challenging the dispositions already agreed to by the Secretary's contracts with the California corporations, and the provision as well of § 5 of the Boulder Canyon Project Act that no person shall be entitled to the stored water except by contract with the Secretary.

It is argued that the constitutional power of the United States to exert any control over the water stored at Boulder Dam is subject to the rights of Arizona to an equitable share in the unappropriated water "until such a time as commerce is actually moving on the river," and that in any case Congress has subordinated that power to Arizona's rights by the provisions of § 4 (a) of the Boulder Canyon Project Act, which authorizes Arizona, California and Nevada to enter into an agreement as to their relative rights in the water of the river. But these and similar contentions, so far as they were not answered adversely to Arizona in *Arizona* v. *California, supra*, 456, cannot be judicially determined in a proceeding to which the United States is not a party and in which it cannot be heard.

Every right which Arizona asserts is so subordinate to and dependent upon the rights and the exercise of an authority asserted by the United States that no final determination of the one can be made without a determination of the extent of the other. Although no decree

572

rendered in its absence can bind or affect the United States, that fact is not an inducement for this Court to decide the rights of the states which are before it by a decree which, because of the absence of the United States, could have no finality. *California* v. *Southern Pacific Co.*, 157 U. S. 229, 251, 257; *Minnesota* v. *Northern Securities Co.*, 184 U. S. 199, 235, 245–247; *International Postal Supply Co.* v. *Bruce*, 194 U. S. 601, 606; *Texas* v. *Interstate Commerce Comm'n*, 258 U. S. 158, 163. A bill of complaint will not be entertained which, if filed, could only be dismissed because of the absence of the United States as a party. *Louisiana* v. *McAdoo*, 234 U. S. 627.

The petition to file the proposed bill of complaint is denied. We leave undecided the question whether an equitable division of the unappropriated water of the river can be decreed in a suit in which the United States and the interested states are parties. Arizona will be free to assert such rights as she may have acquired, whether under the Boulder Canyon Project Act and California's undertaking to restrict her own use of the water or otherwise, and to challenge, in any appropriate judicial proceeding, any act of the Secretary of the Interior or others, either states or individuals, injurious to it and in excess of their lawful authority.

*Petition denied.*