**GRAND RIVER DAM AUTHORITY**

v.

**UNITED STATES.**

No. 226–56.

United States Court of Claims.
July 15, 1959.

---

Q. B. Boydstun, Vinita, Okl., for plaintiff.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

MADDEN, Judge.

The plaintiff, the Grand River Dam Authority, is an agency of the State of Oklahoma, upon which the State of Oklahoma had conferred the right "To control, store and preserve, within the boundaries of the District, the water of Grand River and its tributaries for any useful purpose, and to use, distribute and sell the same within the boundaries of the District;" and "To develop and generate water power and electric energy within the boundaries of the District."

Pursuant to the power granted to it, the Authority made a survey of the Grand River and adopted a plan which contemplated the erection of a dam at Pensacola, and one at Markham Ferry, and one at Fort Gibson. With funds supplied by the defendant, a grant of $8,500,000 and a loan of $11,500,000, it completed the erection of a dam at Pensacola in 1940. On May 12, 1939, the Legislature of Oklahoma authorized the plaintiff to issue $10,000,000 of bonds for the construction of dams at Markham Ferry and at Fort Gibson, and by 1940 it had acquired lands, easements, and rights-of-way, and had constructed transmission lines, substations and other facilities for the connection of the Pensacola project with its contemplated Markham Ferry and Fort Gibson dams.

However, before anything further had been done by the plaintiff, Congress, on August 18, 1941, passed the Flood Control Act (55 Stat. 638, 645), which authorized, among other things, three dam-and-reservoir projects on the Grand River, one at Pensacola, one at Markham Ferry, and another at Fort Gibson, to be constructed by the United States. On May 22, 1946, before any construction had been begun by the plaintiff on a dam at Fort Gibson, the defendant began the construction of a dam at this site and completed it on June 15, 1950.

The Grand River is a nonnavigable stream, but it is one of the tributaries of the Arkansas River, a navigable river. The Fort Gibson project was constructed by the defendant as an integral part of a comprehensive plan for the improvement and regulation of navigation, the control of floods, and the production of hydroelectric power on the Arkansas River and its tributaries.

The plaintiff sues the defendant for the taking of its property as a result of this project. It claims that the defendant must pay compensation for (1) its water power rights at the Fort Gibson unit, (2) its exclusive franchise to develop electric power and energy at the Fort Gibson unit, and (3) certain items of severance damages including storage and headwater benefits accruing to the Pensacola unit from the Fort Gibson unit; the cost and value of surveys, plans and specifications for the Fort Gibson unit; and the loss of the use and value of certain lands and rights-of-way theretofore acquired for the inter-connection of the Fort Gibson unit with the plaintiff's system and for the distribution of electric power and energy from the Fort Gibson unit.

■■ The right of a state to control and utilize the water of a nonnavigable stream within its boundaries is subordinate to the right of the United States to control such waters to the fullest extent necessary to improve or regulate navigation on a navigable river to which

the nonnavibable stream is a tributary. There is no question as to the power of the Federal Government to do what it has done here. State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U. S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487. The question before this court is whether or not it must pay just compensation for any private property it has taken in carrying out its project.

■ The Commerce Clause of the Federal Constitution, Article I, Section 8, gives to the United States the power to improve and regulate navigable waters without any liability for damage to private property within the bed of the navigable stream, i. e., the lands below ordinary high-water mark, and water rights in navigable streams below high-water mark are inferior to and subject to this superior navigation easement and may be taken without compensation. United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101; United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064; United States v. Appalachian Electric Power Company, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243; United States v. Chandler-Dunbar Water Power Company, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063. Where Congress has appropriated the entire flow of a navigable river for a project designed to serve the interests of navigation although other purposes are also served, the owner of fast lands above the high-water mark of the stream has no compensable property rights in the flow of the navigable river. United States v. Twin City Power Company, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240.

■ The United States also has the power to take private property on nonnavigable streams which are tributary to navigable streams, and such Government action cannot be enjoined. State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., supra. In that case, the State of Oklahoma sought, without success, to enjoin the Federal Government from proceeding with the construction of the Denison Dam.

■ But if the Governmental action, under its power to regulate and improve navigable streams, results in the taking of private property located on a nonnavigable stream which is a tributary of the navigable river, the United States must pay just compensation for the private property so taken. United States v. Kansas City Life Ins. Co., 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277, affirming 74 F.Supp. 653, 109 Ct.Cl. 555; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Iowa-Wisconsin Bridge Company v. United States, 84 F. Supp. 852, 114 Ct.Cl. 464, certiorari denied 339 U.S. 982, 70 S.Ct. 1020, 94 L. Ed. 1386.

■ The question then becomes whether or not the plaintiff herein had property rights which have been taken by the United States. We are not faced with a situation involving water rights in the flow of a navigable stream as in United States v. Twin City Power Company, supra. The State of Oklahoma owns the waters of the Grand River, a nonnavigable stream, and the State conferred on the plaintiff all the rights which is possessed in the stream. Oklahoma does not follow the common law doctrine of riparian rights but follows instead the doctrine of prior appropriation for beneficial use or the so-called "Arid States Doctrine." Under this doctrine, the water running in a natural stream is the property of the State. Oklahoma Code, Title 60, Section 60 and Title 82, Section 1, O.S.1951; Murphy v. Kerr, D.C., 296 F. 536. The property taken in the Cress and Kansas City Life Ins. Co. cases, cited above, was the impairment of the value of land in and adjacent to a nonnavigable stream. In the Kelly case, reported with the Cress decision, the property right which was taken and for which compensation had to be paid was the right to the natural flow-off of the water in the nonnavigable stream. Cf. Willow River Power Company, supra, where the Supreme Court said there was not the same right to have the navigable St. Croix flow tail waters away at natural levels that there was in

Kelly to have the nonnavigable stream run off his tail waters at natural levels. Water rights are a property interest which if taken by the United States must be paid for. International Paper Company v. United States, 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410. We believe the same rule should apply to the instant case, and that the plaintiff's vested water rights on a nonnavigable stream were property rights which could not be taken without just compensation.

■■■■■ The other items of property which the plaintiff claims have been taken by the United States include its franchise to develop and generate electric power and energy at the Fort Gibson site, and certain items of severance damage. A license or franchise is a property right for the taking of which compensation must be paid. International Paper Company v. United States, supra; Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; Jackson v. United States, 103 F.Supp. 1019, 122 Ct. Cl. 197; United States v. Smoot Sand & Gravel Co., Inc., 4 Cir., 248 F.2d 822. Cf. Southern Counties Gas Co. v. United States, 141 Ct.Cl. 28, 157 F.Supp. 934, in which this court found that the actions of the United States had made the franchise less valuable but did not amount to a taking of the franchise.

■■■ As to the items of severance damages, we believe that these were in the nature of indirect or consequential damages and therefore not compensable. Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; Omnia Commercial Company v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773.

■■■ The Government's primary defense to this lawsuit was that the plaintiff did not have any private property rights which could be the subject of a taking by the United States. We have answered that contention above. The Government has raised certain other defenses which we have considered and have rejected. The Government's suggestion of an estoppel from certain meetings, letters, etc., seems to us to have no basis. The Government, of course, had the right to take the plaintiff's property, and the only question before this court is the question of whether it could take it without compensation. The Government also urges that the present claim will be "released" by payment to and acceptance by the plaintiff of $6,500,000 authorized but so far as we know not appropriated by an Act of Congress. There is a question as to whether that authorization applied to this action at all or related solely to the Markham Ferry project. In any event, the appropriation, including the conditions, is, of course, a unilateral action on the part of the United States and cannot bind the plaintiff, unless it gets the money and thereby or otherwise releases its rights.

The plaintiff is entitled to recover just compensation for the taking of its water rights and its franchise. The amount of recovery will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

LITTLETON (Retired) and LARAMORE, Judges, concur.

WHITAKER, Judge (dissenting).

The vice in the opinion of the majority stems from the concept embraced in this sentence from its opinion: "The State of Oklahoma *owns* the waters of the Grand River, a nonnavigable stream * * *." The State of Oklahoma did not "own" the waters of the stream; it merely had the right to regulate and control the use of them for the benefit of its citizens. "Ownership" by the state is a concept repugnant to the American theory of government; it is "contrary to the genius of a free government." Under the American system of government, natural resources belong, not to the state, but to the people. The state is not the overlord, doling out privileges to his underlings; it is the servant of the people, chosen by them to administer their common resources for the benefit of all, according to their respective rights. Its sole right is that of regulation and control.

But this right of one of the states of the Union is subject to the superior right of the United States to regulate and control the waters of the river, in the interest of navigation and purposes related thereto. Because the United States had this superior right, it is not liable for the actions complained of.

That, in the opinion of the Chief Judge and me, is the essence of the case. If we are correct in our premise, there has been no taking of private property for public use for which the Fifth Amendment requires the payment of just compensation. Plaintiff, the state's agent, of course has no greater right than its creator, the State of Oklahoma.

The issue presented is a clash in the exercise of the powers of two sovereignties—on the one hand, the power of the Federal Government, under the Commerce Clause of the Constitution, to use and control the waters of a nonnavigable tributary of a navigable stream, in the interest of navigation on the navigable stream; and, on the other hand, the power of a state to use and control those waters for irrigation, the production of power or otherwise, in the interest of its citizens. If the powers of the Federal Government extend to the right of regulation and control of the waters of a nonnavigable tributary of a navigable stream to the extent necessary to control and improve navigation on the navigable stream, its power to do so supersedes the power of the state to use and control the waters of this stream.

That the powers of the Federal Government do extend to the control and use of the waters of a nonnavigable stream for the improvement of navigation on a navigable stream to which it is tributary is settled by State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 523, 61 S.Ct. 1050, 85 L.Ed. 1487. Wherever this power comes in conflict with state power, the state power must yield. It was so held in State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., supra. It had been so held long before in United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136. In that case the state sought to use the waters of the Rio Grande, far above the point where it was navigable, for irrigation, and had given the respondent the right to do so. The Supreme Court said the United States might enjoin such a use because it would interfere with the navigability of the river down stream. The Court said that the power of New Mexico to use those waters was "limited by the superior power of the general government to secure the uninterrupted navigability of all navigable streams within the limits of the United States." 174 U.S. at page 703, 19 S.Ct. at page 775.

In Florida v. Mellon, 273 U.S. 12, 17, 47 S.Ct. 265, 266, 71 L.Ed. 511, it was said: "Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield," citing a number of cases.

In State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., supra, the Federal Government had let a contract to respondent to erect a dam on the Red River some 500 miles above the point where it was navigable. Oklahoma sought to enjoin the erection of the dam, insisting that it was beyond the constitutional power of Congress to build it, and that the building of it would interfere with the state's own program for water development. In answer to the latter contention, the Supreme Court in an unanimous decision said, 313 U.S. at pages 534–535, 61 S.Ct. at page 1064:

"And the suggestion that this project interferes with the state's own program for water development and conservation is likewise of no avail. That program must bow before the 'superior power' of Congress. United States v. Rio Grande Dam & Irrigation Co., supra, 174 U.S. at page 703, 19 S.Ct. 775, 43 L.Ed. 1136; New Jersey v. Sargent, 269 U.S. 328, 337, 46 S.Ct. 122, 124, 70 L.Ed. 289; Arizona v. California, 298 U.S. 558, 569, 56 S.Ct. 848, 854, 80 L.Ed. 1331; United States v. Appalachian Power Co., supra [311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243]."

This is in harmony with the purpose declared by Congress in the Federal Power Act, 49 Stat. 846, 16 U.S.C.A. § 791a et seq., to assume priority in the control of such waters. In section 23(b) of this Act, it is prohibited that any dam should be constructed by any "person, association, corporation, State, or municipality" on such a nonnavigable stream until it receives a license from the Federal Power Commission. The validity of this Act, as so construed, was sustained by the Supreme Court in United States v. Appalachian Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243.

When the Federal Government ousts the state government and takes control over the waters of the river, it has taken no property right of the Grand River Dam Authority, an agency of the State of Oklahoma; it has merely exercised its right to erect a dam at this place, which was superior to the right of the State of Oklahoma to do so, and, hence, superior to the right of its agency to do so. In doing so, it did not take private property for public use for which it is required by the Constitution to pay just compensation.

When it decided to erect the dam the Federal Government did take certain lands, rights-of-way, and other easements that had been acquired by the Authority, but these have been paid for. The only thing that has not been paid for is the exclusion of Oklahoma and its agent from control and use of the waters of this river. The Federal Government having a superior right to use and control them, it does not have to pay the holder of a subordinate right for its exercise.

This necessarily follows from the holding in United States v. Rio Grande Irrigation Co., supra. As stated previously, that company undertook to appropriate all the unappropriated waters of the Rio Grande River in the State of New Mexico, in which state the Rio Grande River was nonnavigable, but the Supreme Court held that the United States was entitled to an injunction to prevent this. If the United States may enjoin the appropriation of waters by a corporation authorized by a state to do so, the United States certainly does not have to pay the corporation for the deprivation of that right.

That case, if authority were needed, would seem to dispose of plaintiff's claim for compensation for the taking of its right to erect a dam at this place and, by so doing, to utilize the water power of the river.

The majority comes to a different conclusion because they start with a false premise, that this was a taking of private property for public use.

JONES, Chief Judge, joins in the foregoing dissenting opinion.