**STATE OF NEVADA, Plaintiff,**

v.

**UNITED STATES of America, James Watt, Secretary of the Interior, Lynn Greenwalt, Director, Fish and Wildlife Service, and Kayler Martinson, Regional Director, Fish and Wildlife Service, Defendants,**

v.

**DEFENDERS OF WILDLIFE, INC., Intervenors.**

**Civ. No. R–78–157 BRT.**

United States District Court, D. Nevada.

Sept. 23, 1982.

Richard H. Bryan, Atty. Gen., Larry D. Struve, Chief Deputy Atty. Gen., Harry W. Swainston, Deputy Atty. Gen., Carson City, Nev., for plaintiff.

Shirley Smith, Asst. U. S. Atty., Lamond R. Mills, U. S. Atty., Reno, Nev., William E. Hill, Dept. of Justice, Washington, D. C., for defendants.

Paul A. Zevnik, Paul, Hastings, Janofsky & Walker, Washington, D. C., for intervenors.

## ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

This action is before the court on Nevada's motion for partial summary judgment and the Government's cross-motion for summary judgment. Although the briefs are lengthy and the arguments many, after careful study we have concluded that there is a clear path to a proper disposition.

The subject matter of the action is the Ruby Lake Wildlife Refuge and its regulation.

The Ruby Lake National Wildlife Refuge was established by Executive Order No. 7923 on July 21, 1938. *See* 2 F.R. 1639. That Executive Order withdrew 7,166 acres of public land for the Refuge. Subsequently, Public Land Order 1878 withdrew 80 acres of public land on June 12, 1959, and Public Land Order 4795 withdrew 440 acres of public land on April 2, 1970. During the late 1930's, Tracts accorded Numbers 3, 5, 8a, and 9a, consisting of 5,062.12, 8,062.16, 7,666.91, 7,621 acres, respectively, were acquired by purchase; and Tract No. 10, consisting of 40 acres, was acquired by condemnation. Tract 7, consisting of 1493 acres, was acquired in 1963 and, at that time, it was the last land in private hands within the meander line of Ruby Lake.

Under the property clause of the Constitution "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or oth-

er Property belonging to the United States." In implementation of its power to make rules and regulations concerning its property, regulations may be promulgated which directly affect conduct upon adjoining or adjacent property not in government ownership to the extent reasonably necessary to effectuate and control the government's stewardship of its own property. *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976); *United States v. Brown,* 552 F.2d 817 (8th Cir. 1977). *Cf. United States v. 1,216.82 Acres of Land,* 573 F.2d 1054 (9th Cir. 1978).

Further, under the Supremacy Clause (U.S.Const. Art. VI, Cl. 2), when Congress acted by enactment of the Migratory Bird Conservation Act, 16 U.S.C. § 715 et seq. and regulations were promulgated thereunder, the law and regulations necessarily superseded and rendered ineffective any attempts by the State of Nevada and its agencies to enforce on the Ruby Lake Refuge any controls inconsistent with the federal law and regulations.

In the light of the foregoing premises, the *sine qua non* of Nevada's action is demonstration that, irrespective of Nevada's possible ownership of the bed of Ruby Lake on a navigable waters theory, the United States does not own sufficient property within the Refuge to support its promulgation of waterfowl regulations under the Property Clause of the Constitution.

The undisputed facts are that 7,686 acres within the Refuge are federal lands withdrawn from entry. Federal ownership cannot be disputed. Forty (40) acres were acquired by condemnation, and at the time there was in effect a Nevada statute affirming the right of eminent domain for "all public uses authorized by the government of the United States." NCL 1929, § 9153(1). The United States purchased 29,905.19 acres from private ownership. Title was conveyed by delivery and acceptance of deeds which purported to transfer not only the patented lands but also the adjoining relicted and submerged lands. All these titles were acquired in the middle 1930's except for 1493 acres added in 1963.

By 1938, the Ruby Lake Wildlife Refuge had been essentially acquired and established and has been operating under federal control since that date. This action was commenced on September 29, 1978, some forty years later.

By the act of July 10, 1952 (66 Stat. 560) 28 U.S.C. § 2409a et seq., the Congress waived sovereign immunity and consented to suit against the United States "in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." This is such an action. Before the foregoing waiver of sovereign immunity, no court would have enjoyed jurisdiction of this action, whether the disputed title to be adjudicated was disputed with a private citizen or with one of the fifty sovereign states. *See Minnesota v. United States,* 305 U.S. 382, 386, 59 S.Ct. 292, 294, 83 L.Ed. 235 (1939):

A proceeding against property in which the United States has an interest is a suit against the United States. *The Siren,* 7 [74 U.S.] Wall. 152, 154 [19 L.Ed. 129]; *Carr v. United States,* 98 U.S. 433, 437 [25 L.Ed. 209]; *Stanley v. Schwalby,* 162 U.S. 255 [16 S.Ct. 754, 40 L.Ed. 960]. Compare *Utah Power & Light Co. v. United States,* 243 U.S. 389 [37 S.Ct. 387, 61 L.Ed. 791]. It is confessedly the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees. As the United States owns the fee of these parcels, the right of way cannot be condemned without making it a party. The exemption of the United States from being sued without its consent extends to a suit by a State. Compare *Kansas v. United States,* 204 U.S. 331, 342 [27 S.Ct. 388, 391, 51 L.Ed. 510]; *Arizona v. California,* 298 U.S. 558, 568, 571, 572 [56 S.Ct. 848, 853, 854, 80 L.Ed. 1331]. Compare *Minnesota v. Hitchcock,* 185 U.S. 373, 382–387 [22 S.Ct. 650, 654–656, 46 L.Ed. 954]; *Oregon v. Hitchcock,* 202 U.S. 60 [26 S.Ct. 568, 50 L.Ed. 935]. Hence Minnesota cannot maintain this suit against the United States unless authorized by some act of Congress.

The statute in question, specifically 28 U.S.C. 2409a(f), contains a statute of limitations:

(f) Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

■ Such a provision for limitation of actions included in a statute waiving sovereign immunity has with great consistency been considered to be a condition on the waiver, that is to say, if the action is time-barred under the statute the waiver of sovereign immunity does not exist and the court lacks jurisdiction. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979); *Park County Montana v. United States,* 626 F.2d 718 (9th Cir. 1980); *Loring v. United States,* 610 F.2d 649 (9th Cir. 1979); *Grosz v. Andrus,* 556 F.2d 972 (9th Cir. 1977); *Szyka v. U. S. Secretary of Defense,* 525 F.2d 62 (2nd Cir. 1975); *United States v. 422,978 Square Feet of Land,* 445 F.2d 1180 (9th Cir. 1971).

The State of Nevada to avoid the bar of the statute of limitations relies upon *State of North Dakota ex rel. Board of University v. Andrus,* 671 F.2d 271 (8th Cir. 1982) and *State of Cal. ex rel. State Lands Commission v. U. S.,* 512 F.Supp. 36 (N.D.Cal.1981). These two cases present a direct conflict in philosophy with the ones that we have cited. The *Kubrick, supra,* decision and the others rely upon the absence of a waiver of sovereign immunity if the action is time-barred, a waiver which is essential if any court is to have jurisdiction. *Minnesota v. United States, supra.* Plaintiff's precedents, by contrast, rely upon the waiver of sovereign immunity but ignore the express condition included in it, saying the condition does not apply to a plaintiff who is itself a sovereign. Inferentially, if this argument had been presented to the *Minnesota v. United States, supra,* court, the decision would have been different because when sovereign sues sovereign the doctrine of sovereign immunity does not apply. We do not believe this to be the law.

■ The merits are interesting but, in view of the bar of the statute of limitations, excite only passing comment. When the purchase by the United States of some 28,000 acres or more of privately owned lands was consummated in the middle 1930's for inclusion in the Ruby Lake Wildlife Refuge and the Secretary of Agriculture accepted delivery of the conveyances, the Migratory Bird Conservation Act, 16 U.S.C. § 715f, provided:

No deed or instrument of conveyance shall be accepted by the Secretary of Agriculture under this act unless the State in which the area lies shall have consented by law to the acquisition by the United States of lands in that State.

The State of Nevada contends that because section 715f was violated the transactions were void. It is true that Nevada's general consent and cession of jurisdiction statute, NCL 1929 § 2895 et seq., had been repealed by the 1933 Nevada legislature, 1933 St. of Nev. 2, and there was no special legislative act consenting to these purchases, but the only authority for the statement that the transactions were void, that is a nullity, because of this situation is the Attorney General of the State of Nevada. The state has ignored the continued effectiveness of NCL 1929 § 9153 which specifically authorizes condemnation of state property for all public uses authorized by the Government of the United States. It is much easier to argue that a specific grant of authority to take by eminent domain includes authority to purchase than to contend for the converse, that is, that the grant of the right to purchase includes the right to condemn, and the latter conclusion has been reached by two recent cases: *Swan Lake Hunting Club v. United States,* 381 F.2d 238 (5th Cir. 1967); *United States v. 1,216.83 Acres of Land, supra.*

■ More importantly, however, section 715f grants no rights to the State of Nevada. It is little more than a statement of policy, a directive to federal officials, which,

if violated, must be enforced at the time of the transaction, not forty years later. In the instant case the federal officers acted under a mistake of law, a mistaken belief that the transactions in question were authorized by the act of June 15, 1935, Pub. L.No. 74–148, 49 Stat. 378, an appropriation act which had arguably obviated the restrictions of section 715f requiring state consent. No authority has been cited for the proposition that transactions completed under these circumstances are void, and there is under analogous circumstances undisputed precedent that such transactions should be upheld and confirmed. Title 41 U.S.C. § 14 expressly declares: "No land shall be purchased on account of the United States, except under a law authorizing such purchase." In *Burns v. United States,* 160 F. 631 (2nd Cir. 1908) the Second Circuit dealt with a violation of this section, saying:

There was an exception to the admission of the deed to the United States on the ground that it was void under section 3736 of the United States Revised Statutes (U.S.Comp.St.1901, p. 2507):

"No land shall be purchased on account of the United States except under a law authorizing such purchase."

The Act of July 7, 1838, c. 171, 5 Stat. 270, appropriated:

"For continuing the works at Buffalo Harbor twenty thousand five hundred dollars; and for erecting a mound or sea wall along the peninsula which separates Lake Erie from Buffalo creek to prevent the influx of the lake over said peninsula forty-eight thousand dollars."

If this strip was necessary to or proper for the protection of the sea wall we think that the act impliedly authorized the purchase. The power to build a sea wall implies the power to do whatever is necessary to that end. *At all events section 3736 should not be construed to apply to executed contracts, and so the United States be prevented from claiming that for which it has paid.* (Emphasis supplied).

The doctrine of sovereign immunity precludes this action and the court is without jurisdiction.

Accordingly,

IT HEREBY IS ORDERED that the defendants' motion for summary judgment is hereby granted.