## DAMON *v.* HAWAII.

**ERROR TO THE SUPREME COURT OF THE TERRITORY OF HAWAII.**

No. 207.  Argued April 12, 1904.—Decided April 25, 1904.

A general law may grant titles as well as a special law.

The act of Hawaii of 1846, " of Public and Private Rights of Piscary," together with royal grants previously made, created and confirmed rights in favor of landlords in adjacent fishing grounds within the reef or one mile to seaward which were vested rights within the saving clause in the organic act of the Territory repealing all laws of the Republic of Hawaii conferring exclusive fishing rights.

A statement in a patent of an apuhuaa in Hawaii that "a fishing right is also attached to this land in the adjoining sea" and giving the boundaries thereof, passes the fishery right even if the *habendum* refers only to the above granted land.

THE facts are stated in the opinion of the court.

*Mr. Francis M. Hatch,* with whom *Mr. Reuben D. Silliman* was on the brief, for plaintiff in error:

The statutes of Hawaii from 1839 down on the subject of fisheries, have given property interests in the fisheries to the adjoining landowner. History and usage are to be looked at in considering these statutes. *Martin v. Waddell,* 16 Pet. 367. These acts are not to be construed as are conveyances between individuals. They are laws as well as grants. *Railway Co.* v.

*Railway Co.,* 97 U. S. 491; *Railway Co.* v. *Davison,* 65 Michigan, 416; *Winona & R. Co.* v. *Barney,* 113 U. S. 618; *United States* v. *Railroad Co.,* 150 U. S. 1: *Barden* v. *Nor. Pac. R. R.,* 154 U. S. 288.

Fishing rights when legally acquired are rights of property, not mere privileges. *Boston* v. *Lecraw,* 17 How. 462; *Manchester* v. *Massachusetts,* 139 U. S. 259; *McCready* v. *Virginia,* 94 U. S. 391; *Commonwealth* v. *Alger,* 7 Cush. 53.

This is conclusively settled in Hawaii by *Haalelea* v. *Montgomery,* 2 Hawaii, 62.

The law as settled in Hawaii governs. *Tel. Co.* v. *Manning,* 186 U. S. 238; *Louisiana* v. *Pillsbury,* 105 U. S. 278; *Moody* v. *Railroad Co.,* 146 U. S. 162; *Railroad Co.* v. *Trust Co.,* 173 U. S. 99.

The "royal patent," under which plaintiff in error claims, is a muniment of title, under the great seal of a former government, and imports verity. All preliminary acts, involving the discretion of ministerial officers, are now beyond review. *United States* v. *Hanson,* 16 Pet. 199; *Knight* v. *U. S. Land Assn.,* 142 U. S. 183; *San Francisco* v. *Levy,* 138 U. S. 671.

The Joint Resolution of Congress of July 7, 1898, annexing Hawaii to the United States continued in force all municipal legislation of Hawaii, not inconsistent with the Constitution of the United States, until Congress should otherwise enact.

The fishery laws of Hawaii were among those continued in force.

Congress by the organic act for the government of Hawaii, repealed these fishing laws but saved vested rights. Rights, therefore, which were vested at the time of the transfer of sovereignty were protected by the act of Congress establishing a government for Hawaii. The court below was limited in its inquiry to a consideration if such rights existed in Hawaii prior to annexation. It erred in ignoring the saving clause of the organic act and in repudiating the old law in Hawaii on the subject.

*Mr. Lorrin Andrews,* Attorney General of the Territory of Hawaii, for defendant in error:

The royal patent under which the plaintiff in error claimed a grant did not contain words of conveyance sufficient to pass title to alleged fishing rights. The recital that a fishery in the sea is "attached" to the land does not grant the fishery. A deed to operate as an effectual conveyance should contain sufficient and proper words. 9 Am. & Eng. Ency. 138; 1 Devlin on Deeds, § 211; *McKinney* v. *Settles,* 13 Missouri, 541; *Hemmelman* v. *Mounts,* 87 Indiana, 178.

Government grants of lands, franchises and privileges are invariably construed in favor of the public and against the grantee. *Charles Bridge* v. *Warren Bridge,* 11 Pet. 539; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 666; *Martin* v. *Waddell,* 16 Pet. 411; *Tucker* v. *Ferguson,* 22 Wall. 575; *Newton* v. *Commissioners,* 100 U. S. 561; *Shively* v. *Bowlby,* 152 U. S. 1; *Johnson* v. *Crowe,* 87 Pa. St. 184; *Commissioners* v. *Water Co.,* 104 Massachusetts, 449; *Water Co.* v. *Water Co.,* 80 Maine, 563.

The fisheries claimed in this suit did not pass to the plaintiff in error as an appurtenance to his land. *Haalelea* v. *Montgomery,* 2 Hawaii, 70. The right to fish in tide waters is a public right, which belongs to the State and to all the people, and not to private individuals. 13 Am. & Eng. Ency. 560; *Shively* v. *Bowlby,* 152 U. S. 1; *Smith* v. *Maryland,* 18 How. 71; *Proctor* v. *Wells,* 103 Massachusetts, 216; *Lansing* v. *Smith,* 4 Wend. 9; *Wooley* v. *Campbell,* 37 N. J. Law, 163; *State* v. *Roberts,* 59 N. H. 256; *Weston* v. *Sampson,* 8 Cush. 347; *Lincoln* v. *Davis,* 53 Michigan, 375.

The plaintiff in error was not entitled to any title in said fisheries through prescription or long continued use. 13 Am. & Eng. Ency. 581, note 3; *Fishing Co.* v. *Carter,* 61 Pa. St. 21. Prescription can only be based upon the supposition that a grant was originally made and has been lost or destroyed. Use or possession being permissive cannot result in the acquisition of title. 1 Am. & Eng. Ency. 794; *Kirk* v. *Smith,* 9 Wheat. 288.

In order to obtain a title in Hawaii a land commission award or a royal patent must have been obtained, and in no other way could it have been obtained. *Dowsett* v. *Maukeala,* 10 Hawaii, 169; *Thurston* v. *Bishop,* 7 Hawaii, 421; *Kenoa* v. *Meek,* 6 Hawaii, 67; *Kaai* v. *Mahuka,* 5 Hawaii, 356; *Kahoomana* v. *Minister,* 3 Hawaii, 639.

No fishing right could have been obtained by the plaintiff in error through custom.

No custom can transfer the title of public property to an individual, and the right to fish cannot be acquired by custom. 13 Am. & Eng. Ency. 583.

Plaintiff in error had no vested right in said fisheries within the meaning of the organic act of the Territory of Hawaii. His claims were based merely upon legislative enactments which were public laws, and all these laws were repealed by an act to provide a government for the Territory of Hawaii, passed by the United States Congress in 1900. A mere expectation based upon an anticipated continuance of general laws cannot be claimed to be a vested right. There can be no vested right under a public statute relating to a public subject, which does not amount to a grant or contract. *Newton* v. *Commissioners,* 100 U. S. 587; *Dobbins* v. *Bank,* 112 Illinois, 562; *Phipps* v. *State,* 85 Am. Dec. 654; *Pratt* v. *Brown,* 3 Wisconsin, 603; *Commissioners* v. *Water Power Co.,* 104 Massachussetts, 446; *Johnson* v. *Crowe,* 87 Pa. St. 189; *Lumber Co.* v. *Rust,* 168 U. S. 589.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action at law, somewhat like a bill to quiet title, to establish the plaintiff's right to a several fishery of a peculiar sort, between the coral reef and the ahupuaa of Moanalua on the main land of the Island of Oahu. The organic act of the Territory of Hawaii repealed all laws of the Republic of Hawaii which conferred exclusive fishing rights, subject, however, to vested rights, and it required actions to be started within

two years by those who claimed such rights. Act of April 30, ·
1900, c. 339, §§ 95, 96; 31 Stat. 141, 160. At the trial the
presiding judge directed a verdict for the defendant. Ex-
ceptions were taken but were overruled by the Supreme Court
of the Territory, and the case comes here by writ of error.

The right claimed is a right within certain metes and bounds
to set apart one species of fish to the owner's sole use, or,
alternatively, to put a taboo on all fishing within the limits for
certain months and to receive from all fishermen one-third of
the fish taken upon the fishing grounds. A right of this sort
is somewhat different from those familiar to the common law,
but it seems to be well known to Hawaii, and, if it is estab-
lished, there is no more theoretical difficulty in regarding it
as property and a vested right than there is regarding any
ordinary easement or *profit a prendre* as such. The plaintiff's
claim is not to be approached as if it were something anomalous
or monstrous, difficult to conceive and more difficult to admit.
Moreover, however anomalous it is, if it is sanctioned by
legislation, if the statutes have erected it into a property right,
property it will be, and there is nothing for the courts to do
except to recognize it as a right. *Wedding* v. *Meyler*, 192
U. S. 573, 583.

The property formerly belonged to Kamehameha IV, from
whom it passed to his brother Lot Kamehameha and from him
by mesne conveyances to the plaintiff. The title of the latter
to the ahupuaa is not disputed. He claims the fishery also
under a series of statutes and a royal grant. The history is as
follows: In 1839 Kamehameha III took the fishing grounds
from Hawaii to Kauai and redistributed them—those named
without the coral reef, and the ocean beyond, to the people—
those "from the coral reef to the seabeach for the landlords and
for the tenants of their several lands, but not for others." The
landlord referred to seems to have been the konohiki or over-
lord of an ahupuaa or large tract like that owned by the plain-
tiff. It is not necessary to speculate as to what the effect of
this act of the king would have been, standing alone, he then

having absolute power.  It had at least the effect of inaugurating a system, *de facto*.  But in 1846, the monarchy then being constitutional, an act was passed, article 5 of which was entitled "Of the Public and Private Rights of Piscary."  By the first section of this article it was provided again that the same fishing grounds outside the reef should be free to the people, etc.; and then by the second it was enacted that the fishing grounds from the reefs to the beach, or, where there are no reefs, for one mile seaward, "shall in law be considered the private property of the landlords whose lands, by ancient regulation, belong to the same; in the possession of which private fisheries the said landholders shall not be molested except," etc.

By § 3 "the landholders shall be considered in law to hold said private fisheries for the equal use of themselves and of the tenants on their respective lands; and the tenants shall be at liberty to use the fisheries of their landlords, subject to the restrictions in this article imposed."  Then follows a statement of the rights of the landlord as they have been summed up above and a provision that the landlords shall not have power to lay any tax or to impose any restrictions upon their tenants regarding the private fisheries other than those prescribed.

The Civil Code of 1859, § 387, repeated the enactment of § 2, that the fishing grounds within the reef or one mile seaward "shall, in law, be considered the private property of the konohiki," etc., in nearly the same words, and other sections codified the regulations just mentioned.  There was a later repetition in the Penal Laws of 1897, § 1452, etc., and this was in force when the organic act of Congress was passed, repealing, as we have said, the laws conferring exclusive fishing rights, but preserving vested rights.

The foregoing laws not only use the words "private property," but show that they mean what they say by the restrictions cutting down what otherwise would be the incidents of private property.  There is no color for a suggestion that they

created only a revocable license, and if they imported a grant or a confirmation of an existing title, of course the repeal of the laws would not repeal the grant. The argument against their effect was not that in this case the ahupuaa did not belong to the fishery, within the words "landlords whose lands, by ancient regulation, belong to the same," (the land seems formerly to have been incident to the fishery,) but that citizens have no vested rights against the repeal of general laws. This is one of those general truths which become untrue by being inaccurately expressed. A general law may grant titles as well as a special law. It depends on the import and direction of the law. A strong example of the application of the rule intended by the argument is to be found in *Wisconsin & Michigan Railway* v. *Powers*, 191 U. S. 379, where a railroad company was held to have no vested right to exemptions proclaimed in a general tax act. The statute was construed not to import an offer, covenant or grant to railroads which might be built in reliance upon it. But if a general law does express such an offer, as it may, the grant is made. If the Hawaii statutes did not import a grant it is hard to see their meaning.

However, in this case it is not necessary to invoke the statutes further than to show that, by the law in force since 1846 at least, such rights as the plaintiff claims, and which, as is shown by the evidence, he and his predecessors in title have been exercising for forty years, have been recognized as private property. Such is the view of the leading case, decided in 1858 and acquiesced in, we believe, ever since. *Haalelea* v. *Montgomery*, 2 Hawaiian Rep. 62, 66. In the present instance the plaintiff claims under a royal patent, admitted to have been effective as to whatever, by its true construction, it purported to convey. This patent describes the ahupuaa by metes and bounds, and then the granting clause goes on: "There is also attached to this land a fishing right in the adjoining sea, which is bounded as follows"—again giving boundaries, and continuing: "The islands of Mokumoa, Mokuonini and Mokuoco are a part of Moanalua, and are included in the above area."

The description of what is intended to be conveyed could not be plainer. But the habendum is "to have and to hold the above granted land," and it is said that as the fishery of an overlord or konohiki, unlike the rights of tenants, did not pass as an incident of land, but must be distinctly granted, the fishery was not included in the patent. *Haalelea* v. *Montgomery*, 2 Hawaiian Rep. 62, 71. Again, we must avoid being deceived by a form of words. We assume that a mere grant of the ahupuaa without mention of the fishery would not convey the fishery. But it does not follow that any particular words are necessary to convey it when the intent is clear. When the description of the land granted says that there is incident to it a definite right of fishery, it does not matter whether the statement is technically accurate or not; it is enough that the grant is its own dictionary and explains that it means by "land" in the habendum land and fishery as well. There is no possibility of mistaking the intent of the patent. It declares that intent plainly on its face. There is no technical rule which overrides the expressed intent, like that of the common law, which requires the mention of heirs in order to convey a fee. We are of opinion that the patent did what it was meant to do, and therefore that the plaintiff is entitled to prevail.

*Judgment reversed.*