KAPIOLANI ESTATE, LTD., *v.* TERRITORY OF HAWAII.

RESERVED QUESTIONS FROM FIRST CIRCUIT COURT.

ARGUED OCTOBER 3, 1907.      DECIDED OCTOBER 29, 1907.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

FISHERY, ACTION TO ESTABLISH—*change of venue.*

    A circuit court has power with the consent of both parties to change the venue in an action to establish a fishing right under the Organic Act.

ID.—*whether within Organic Act.*

    A fishery claimed in the Hanapepe River, Kauai, is held not to be included under sections 95 and 96 of the Organic Act.

OPINION OF THE COURT BY WILDER, J.

This is an action instituted in the fifth circuit court to establish a fishing right under Sec. 96 of the Organic Act, which action, by consent of all parties, was transferred to the first circuit court, which last court reserved two questions for the consideration of this court.

The first reserved question is whether the fifth circuit court had power with the consent of both parties to change the venue and transfer the record to the first circuit court.

Secs. 1647 and 1649 of the Revised Laws provide that "The several circuit courts shall have jurisdiction * * * as follows: * * *

"Fourth. Of all civil causes at law, except as otherwise expressly provided;

"Fifth. Any circuit court may, upon satisfactory proof that a fair and impartial trial cannot be had in any case pending in such court, and after the parties thereto shall have had opportunity to be heard, change the venue to some other circuit

court and order the record to be transferred thereto; provided, however, that any circuit court may, in its discretion, upon the consent of all the parties to any civil cause pending in such court, change the venue to some other circuit court and order the record to be transferred thereto." R. L., Sec. 1647.

"Provided, however, that the power and jurisdiction of circuit courts and circuit judges in chambers relating to causes of a civil nature as hereinbefore defined, shall be limited as follows: * * *

"Second. Actions of ejectment, actions to quiet title in real property and actions of trespass quare clausum fregit shall be triable only in the circuit in which the real property in question is situated." R. L., Sec. 1649.

Plaintiff claims that this is an action to quiet title in real property and is triable only in the fifth circuit in which the fishery claimed is situated. Assuming, but not deciding, that an action to quiet title in real property is triable only in the circuit in which the real property in question is situated and that the venue of such an action cannot be changed, it does not follow that the venue of this action cannot be changed to the first circuit. This is an action specially authorized by Sec. 96 of the Organic Act, which provides that "any person who claims a private right to any such fishery shall, within two years after the taking effect of this act, file his petition in a circuit court of the Territory of Hawaii setting forth his claim to such fishing right, service of which petition shall be made upon the attorney general, who shall conduct the case for the Territory, and such case shall be conducted as an ordinary action at law."

The requirements that the petition shall be filed in "a circuit court" and that the case shall be conducted as "an ordinary action at law," and the remark in *Damon v. Hawaii,* 194 U. S. 154, 157, that the action is "somewhat like a bill to quiet title," do not make it an action to quiet title in real property within the meaning of our statutes. It is not alleged that defendant claims an interest in the property adverse to the

plaintiff, and the declaration as a whole shows that it is not a statutory action to quiet title in real property. The first reserved question is answered in the affirmative.

The second reserved question is whether the fishery claimed in this action is included under Secs. 95 and 96 of the Organic Act.

The fishery claimed is entirely within the Hanapepe river on the Island of Kauai, where the tide to a certain extent rises and falls, the water being a mixture of sea water brought into the river by the action of the tide and fresh water coming down the river. The fish taken are sea fish coming from the ocean. No weir or artificial inclosure exists across the mouth of the river. The title to the fee of the bottom of the river is in the plaintiff.

Sec. 95 of the Organic Act is as follows:

"That all laws of the Republic of Hawaii which confer exclusive fishing rights upon any person or persons are hereby repealed, and all fisheries in the sea waters of the Territory of Hawaii not included in any fish pond or artificial inclosure shall be free to all citizens of the United States, subject, however, to vested rights; but no such vested right shall be valid after three years from the taking effect of this Act unless established as hereinafter provided."

It is then provided by Sec. 96 of the Organic Act that one who claims a private right to "any such fishery" shall file his petition to establish the same, etc. We take it that "any such fishery" means the fishery or fishing right referred to in Sec. 95.

Congress intended to do away with all fisheries in the sea waters of the Territory belonging to private individuals and not included in any fish pond or artificial inclosure and to provide for the condemnation of such of them as were vested rights. In *Damon v. Hawaii,* 194 U. S. 154, and in *Carter v. Hawaii,* 200 U. S. 255, fishing rights in the sea waters of the Territory belonging to private individuals, in the first case

granted by royal patent and in the second case conferred by statute, were held to be vested rights.

It is not the kind of fish caught that determines the question but it is the place where the fish are caught. For instance, in the *Damon* and *Carter* cases above cited the fishing rights would not extend to wherever the fish would go. So the fact that the kind of fish taken in this river are sea fish which have come in from the ocean is immaterial. In this case no claim is made that there was a grant of a fishing right as such.

In 1839 King Kamehameha III resumed possession of all the fishing grounds in the islands and redistributed them, giving those without the coral reef, namely, the Kilohee ground, the Luhee ground, the Malolo ground, and the ocean beyond, to the people, and those "from the coral reefs to the sea beach are for the landlords and for the tenants of their several lands but not for others." Subsequent statutes, which, with few changes, have continued in force until repealed by the Organic Act, confirm this division by enacting that "the fishing grounds from the reefs, and where there happen to be no reefs, from the distance of one geographical mile seaward to the beach at low water mark, shall, in law, be considered the private property of the konohikis, whose lands, by ancient regulation, belong to the same," and further setting out the rights and restrictions of the konohikis and tenants in regard thereto. R. L. Ch. 38. See *Damon v. Hawaii,* 194 U. S. 154, 158; *Haalelea v. Montgomery,* 2 Haw. 62, 65. No reference is made to fishing rights of the kind claimed in this action.

The conclusion is that whatever fishing right the plaintiff may have in this case is not included in the provisions of the Organic Act. ·

The second reserved question is accordingly answered in the negative.

*B. L. Marx,* (*Kinney & Marx* on the brief,) for plaintiff.

*W. L. Whitney,* Deputy Attorney General, (*C. R. Hemenway,* Attorney General, also on the brief,) for defendant.